MILLER v. MORLEY FINISHING MACH. CO.

(Circuit Court of Appeals, First Circuit. April 15, 1898.)

No. 241.

SPECIFIC PERFORMANCE—PRELIMINARY INJUNCTION.

In a suit for specific performance of an alleged contract for the assignment of a large number of patents belonging to defendant, a preliminary injunction, involving the defendant in much inconvenience and possible loss, should not be granted, restraining him from selling or otherwise disposing of a list of patents enumerated as coming within the agreement, where one of the terms of the contract is so indefinite as to make it doubtful whether the court could enforce it, and where it is also doubtful whether some of the patents for which the injunction is sought are embraced within the terms of the contract.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a bill by the Morley Finishing Machine Company, a corporation organized under the laws of Maine, against Oliver A. Miller, a citizen of Massachusetts, for specific performance of a contract. In the circuit court a preliminary injunction was granted, restraining the defendant from selling, assigning, or transferring certain patents owned by him, and which were alleged to be subject to the agreement sought to be enforced. From this order the defendant has appealed.

The bill contains the following allegation, among others:

(1) The plaintiff company is the owner of a number of United States letters patent covering inventions and improvements in tree feet or boot trees and boot-treeing machines, used by boot and shoe manufacturers in the finishing of boots and shoes, and was organized for the purpose of manufacturing tree feet or boot trees and boot-treeing machines embodying the inventions and improvements covered by said patents or such other patents as it might acquire, and selling or leasing the machines and appliances so manufactured. The defendant, Miller, is the owner of a large number of patents and rights in patents covering other inventions and improvements in the same line as those covered by the plaintiff's patents,—that is to say, in boot and shoe trees or tree feet and boot-treeing machines and devices, to be used in con-

nection therewith, and machinery to be used in the finishing of boots and shoes, and accomplishing the same or similar results as the boot trees and boot-treeing machines covered by the plaintiff's patents,—and for some years past has been, and is now, engaged in manufacturing, in a shop or factory owned by him in said Brockton, boot trees and boot-treeing machines and devices, to be used in connection therewith under his said patents, and in selling or leasing the same; and such boot trees, boot-treeing machines, and devices manufactured by the defendant, Miller, are widely distributed in boot and shoe factories throughout the United States.

The bill then enumerates certain patents as being among those owned by the defendant, Miller. The contract which the bill seeks to enforce related to these patents. It was negotiated in behalf of the complainant by Charles A. Sinclair, one of its directors, and was dated October 9, 1897; being in full as follows:

Memorandum of an agreement made this day, between Mr. O. A. Miller, of Brockton, Mass., and the Morley Finishing Machine Company, by Wm. B. Lewis, of Boston, president of said company, witnesseth as follows: In consideration of one dollar, and other valuable consideration, receipt of which is hereby acknowledged each to the other, the said Miller agrees to turn over and transfer his business in tree feet, tree-feet machinery, all patents, all machines, tools, and fixtures, and everything pertaining to the manufacturing of said machines and said tree feet, to the said Morley Finishing Machine Company or its representatives, and further agrees that he will not engage in any business, during the life of the said Morley Finishing Machine Company's patent, that shall in any way interfere or injure said tree-feet business. In consideration and upon the promise of the said Morley Finishing Machine Company to take the necessary steps immediately to increase the capital stock of their company to three hundred and fifty thousand dollars, the said Miller to receive outright one hundred thousand dollars of this stock, and fifty thousand dollars to be put into the treasury of said Morley Finishing Machine Company. It is understood and agreed that the said Miller, in consideration of his turning over the above-mentioned business, patents, machinery, tools, and fixtures, and everything that pertains to the business excepting his real estate, shall be elected manager of said business for the term of one year, receiving as compensation for his services five thousand dollars, payable in equal quarterly payments. It is further understood and agreed that the Morley Finishing Machine Company shall have the use, for one year from the date of this transfer, of the said real estate, power, and plant, and everything that pertains to the manufacturing of tree feet now used by the said Miller, free of expense to the said Morley Finishing Machine Company during that time, or for such less time as said Morley Finishing Company may occupy it. It is agreed by both parties to this agreement that this agreement shall be submitted to Messrs. Fish, Richardson & Storrow, who shall draw up an agreement, which shall be signed by both parties to this agreement, which shall insure the faithful performance of everything outlined in this agreement; and it is further agreed that the agreement and transfer shall go into effect as of November first, eighteen hundred and ninety-seven. Witness our hands and seals, this ninth day of October, eighteen hundred and ninety-seven.

William B. Lewis, President. [Seal.]<br>Morley Finishing Machine Co.<br>Oliver A. Miller.

Witnesses:
    J. F. Springfield.
    Edw. C. Storrow.

On October 11, 1897, Mr. Sinclair addressed the following letter to Mr. Lewis:

Manchester and Lawrence Railroad, Boston, Mass., October 11, 1897.
William Lewis, Esq., President Morley Finishing Machine Company—Dear Sir: Mr. Miller has just been in to see me, and has called my attention to the

fact that, in the agreement which we signed for the consolidation of our businesses, we omitted to state the fact that he was to receive cash for his merchandise. This was my understanding, and was what we agreed to do with Mr. Miller. Leaving it out of the signed agreement was an oversight, and it is entirely proper he should have something to show what the understanding is. If you agree with me as to the intention, I will ask you to please indorse on the back of this your approval. I think this will cover the necessity, as Mr. Fish is to draw up an agreement, and can embody this part of the transaction in the agreement which we will all finally sign.

Yours, truly,                               [Signed]  Chas. A. Sinclair.

Indorsed as follows:

My understanding is the same as outlined within, and we will, in the agreement to be drawn by Messrs. Fish, Richardson & Storrow, have it fully set forth.

[Signed]                          William B. Lewis, President,
Boston, Oct. 11/97.                  Morley Finishing Machine Company.

The bill, after setting out the agreement of October 9, 1897, and alleging various steps taken on its part by way of performance, proceeded as follows:

And the plaintiff company further avers that the said agreement of October 9, 1897, was submitted, as provided by its terms, to Messrs. Fish, Richardson & Storrow, counsel for the plaintiff company, who have drawn up an agreement, a copy of which is hereto annexed, marked "Exhibit B," which has been duly executed by the plaintiff company, and which by its terms secures the faithful performance by both parties of everything outlined in said agreement of October 9, 1897; and the plaintiff company has tendered said agreement so prepared and so executed by it to the defendant for his signature; and that the defendant has refused to execute the same, or to execute any other proper instrument turning over and transferring his said business, patents, and other property to the plaintiff, as provided in the said agreement of October 9, 1897, and has refused and still refuses to perform or carry out his said agreement in any respect, and has retained said business, patents, and other property for his own use, and has, by the use of said business, patents, and other property, carried on a business of manufacturing, selling, and leasing boot trees and other boot-treeing machinery in competition with the plaintiff with great profit to him, but to what amount the plaintiff is ignorant and cannot learn save by the discovery herein prayed for, and to the great and irreparable damage of the plaintiff, and proposes to continue said wrongful acts. And your orator is informed and believes that the said defendant, contriving to injure the plaintiff, and to place it forever out of the power of this plaintiff to secure the performance of said contract, and wholly regardless of his agreement with the plaintiff, is secretly planning to sell the most valuable parts of said business, property, and patents to some person or persons to the plaintiff unknown; and, unless restrained by the order of this honorable court, the said defendant will actually make said sale and transfer, whereby the rights secured to the plaintiff by said agreement will be rendered worthless.

The Exhibit B mentioned in the bill as having been prepared by complainant's counsel for the purpose of carrying the agreement of October 9, 1897, into effect, is here set out in full:

### Exhibit B.

This agreement and assignment, made this —— day of ——, A. D. 1897, by and between Oliver A. Miller, of Brockton, Massachusetts, and the Morley Finishing Machine Company, a corporation duly organized under the laws of the state of Maine, hereinafter called the "Morley Company," witnesseth:

That whereas said Miller, by the terms of a certain agreement dated October 9th, 1897, agreed to turn over and transfer to the Morley Company his business in tree feet, tree-feet machinery, all patents, all machines, tools,

and fixtures, and everything pertaining to the manufacturing of said machines and said tree feet, excepting his real estate, for the consideration set out in said agreement; and whereas the capital stock of the Morley Company has been increased as provided in said agreement, except that by the agreement of the parties said increase was to five hundred thousand dollars instead of to three hundred and fifty thousand dollars, and the Morley Company has issued and delivers to said Miller simultaneously herewith a certificate for ten thousand shares of its capital stock, of the par value of one hundred thousand dollars, and has in its treasury twenty thousand shares of its capital stock, of the par value of two hundred thousand dollars: Now, therefore, be it known:

(1) That in consideration of the issue and delivery of the said stock to said Miller, and of the covenants and agreements of said Morley Company herein contained, and in further consideration of the sum of one dollar to him paid by the said Morley Company, the receipt whereof is hereby acknowledged, the said Miller does hereby grant, sell, assign, transfer, and deliver unto the said Morley Company his business in tree feet and tree-feet machinery, all machines, tools, and fixtures, and everything pertaining to the manufacture of tree feet and tree-feet machines and to his tree-feet business, except real estate owned by him.

(2) For the consideration aforesaid, said Miller does further sell, assign, transfer, and set over unto the Morley Company the following letters patent of the United States, together with the inventions therein shown and described, viz.: No. 317,476, granted to Abel D. Tyler, Jr., for boot tree, May 5, 1885; No. 319,354, granted to Abel D. Tyler, Jr., assignor to Oliver A. Miller, for boot tree, June 2, 1885; No. 319,355, granted to Abel D. Tyler, Jr., assignor to Oliver A. Miller, for boot tree, June 2, 1885; No. 319,356, granted to Abel D. Tyler, Jr., assignor to Oliver A. Miller, for boot tree, June 2, 1885; No. 347,309, granted to A. R. Wellman, assignor to Oliver A. Miller, for boot tree, August 10, 1886; No. 348,937, granted to Abel D. Tyler, Jr., assignor to Oliver A. Miller, for boot or shoe tree, September 7, 1886; No. 393,003, granted to Alfred B. Fowler, assignor to Oliver A. Miller, for boot-treeing machine, November 20, 1888; No. 395,668, granted to George E. Smith, assignor of one-half to William A. Knipe, for last, January 1, 1889; No. 427,698, granted to Howard G. Locke, assignor of one-half to Brockton Last Co., for boot or shoe tree, May 13, 1890; No. 440,788, granted to Jothan H. Burbank, Lovina J. Burbank, administratrix, assignor to Oliver A. Miller, for boot tree, November 18, 1890; No. 441,115, granted to F. L. Stone and A. R. Wellman, assignors to Oliver A. Miller, for boot or shoe tree, November 18, 1890; No. 441,116, granted to A. R. Wellman, assignor to Oliver A. Miller, for boot tree, November 18, 1890; No. 441,117, granted to A. R. Wellman, assignor to Oliver A. Miller, for boot tree, November 18, 1890; No. 442,033, granted to Alfred B. Fowler, assignor to Oliver A. Miller, for boot-treeing machine, December 2, 1890; No. 442,034, granted to Alfred B. Fowler, assignor to Oliver A. Miller, for boot-treeing machine, December 2, 1890; No. 449,877, granted to W. Gordon, assignor of one-half to Oliver A. Miller, for last, April 7, 1891; No. 452,142, granted to Howard G. Locke, William H. Cary, and Joseph E. Kimball, said Locke assignor to Brockton Last Co., for shoe tree, May 12, 1891; No. 500,711, granted to W. Gordon, assignor to O. A. Miller, for last, July 4, 1893; No. 556,096, granted to W. Gordon and C. E. Gordon, for last, March 10, 1896; design No. 26,040, granted to Oliver A. Miller, for ironing tool, September 15, 1896; No. 557,210, granted to H. G. Locke, assignor to O. A. Miller, for last, March 31, 1896; No. 559,492, granted to H. G. Locke, assignor to Brockton Last Co., for last, May 5, 1896; No. 568,326, granted to J. W. Barlow, assignor to O. A. Miller, for last, September 29, 1895.

Said Miller does also, for the consideration aforesaid, hereby sell, assign, transfer, and set over unto the Morley Company all his right, title, and interest in, to, and under any and all other letters patent (and the inventions therein shown and described), whether of the United States or of any foreign country, which pertain to tree feet and tree-feet machinery, especially including the following letters patent of the United States, viz.: No. 342,298, granted to Oliver I. Howe, for boot or shoe tree foot, May 18, 1886; No.

420,501, granted to Clarence A. Sumner, assignor of one-half to Oliver A. Miller, for boot or shoe treeing machine, February 4, 1890. And also the following foreign letters patent, viz.: English letters patent No. 6,709, dated June 2, 1885, to William R. Lake, on communication from O. A. Miller; English letters patent No. 6,710, dated June 2, 1885, to William R. Lake, on communication from O. A. Miller; English letters patent No. 7,974, dated May 22, 1890, to Alfred B. Fowler; English letters patent No. 18,629, dated November 18, 1890, to Henry H. Lake, on communication from O. A. Miller; French letters patent No. 169,302, dated June 2, 1885, to Oliver A. Miller; French letters patent No. 209,964, dated December 3, 1890, to Alfred B. Fowler; German letters patent No. 34,593, dated June 2, 1885, to Oliver A. Miller; German letters patent No. 34,687, dated June 2, 1885, to Oliver A. Miller; German letters patent No. 58,742, dated December 3, 1890, to Alfred B. Fowler; German letters patent No. 59,978, dated November 18, 1890, to Oliver A. Miller.

And said Miller does also, for the consideration aforesaid, hereby sell, assign, transfer, and set over unto the Morley Company all his right, title, and interest in and to any and all applications for letters patent the inventions of which pertain to tree feet and tree-feet machinery, especially including the following applications for letters patent of the United States, viz.: Ser. No. 364,688, filed September 11, 1880, by Howard G. Locke; Ser. No. 453,749, filed December 1, 1892, by Howard G. Locke; application filed by George E. Smith for lasts, assigned to O. A. Miller, July 22, 1895, recorded in United States patent office, Liber T 51, page 416; application filed by George E. Smith, for lasts, assigned to O. A. Miller, October 5, 1896, recorded in United States patent office, Liber O 54, page 269; application filed by Charles H. Saunders, for hinged last, assigned to O. A. Miller, August 14, 1896, recorded in United States patent office, Liber K 54, page 168; application filed by Charles H. Saunders, for lasts, assigned to O. A. Miller, October 7, 1896, recorded in United States patent office, Liber W 54, page 111; application filed by Oliver A. Miller and Don C. Luce, for lasts, said Luce's interest having been assigned to said O. A. Miller, July 3, 1897, recorded in United States patent office, Liber F 56, page 199; application filed by John W. Barlow, for lasts, assigned to O. A. Miller, February 17, 1897, recorded in United States patent office, Liber P 55, page 4; application filed by John W. Barlow, for lasts, assigned to O. A. Miller, February 17, 1897, recorded in United States patent office, Liber P 55, page 4.

Said Miller does hereby authorize and request the commissioner of patents to issue the several letters patent that may be granted on such applications, or any of them, to the said Morley Finishing Machine Company, its successors and assigns. To have and to hold the said goods and chattels, letters patent, applications, and other property to the said Morley Finishing Machine Company and its successors and assigns, to its and their own use and behoof forever.

(3) For the consideration aforesaid, said Oliver A. Miller does hereby covenant and agree that he will permit the Morley Company to use and occupy, free of expense to the Morley Company, for one year from November 1, 1897, his factory, power, plant, and everything that pertains to the manufacture of tree feet used by the said Miller on the ninth day of October, A. D. 1897.

(4) For the consideration aforesaid, the said Miller does hereby covenant and agree that he will not engage in any business that shall in any way injure the said tree-feet business assigned and sold by these presents to the Morley Company, until the expiration of the Morley Company's letters patent No. 589,696, dated September 7, 1897.

(5) In consideration of the foregoing transfers and assignments from and agreement of the said Miller, the Morley Company does hereby covenant and agree that said Miller shall be elected manager of its business for the term of one year from the first day of November, 1897, and that it will pay to said Miller for said period of one year a salary of five thousand dollars in equal quarterly payments, the first payment to be made February 1, 1898.

(6) This instrument shall take effect as of the close of business on the thirty-first day of October, A. D. 1897.

In witness whereof, the said Oliver A. Miller has hereunto set his hand

87 F.—40

and affixed his seal, and the said Morley Finishing Machine Company has caused this instrument to be signed and its corporate seal to be hereunto affixed by Wm. B. Lewis, its president, and John F. Springfield, its treasurer, thereunto duly authorized, in duplicate, the day and year first above written.

Morley Finishing Machine Company,

[Corporate Seal.]          By William B. Lewis, President,
John F. Springfield, Treasurer.

The restraining order (which by a subsequent order of the court became a preliminary injunction) was in part as follows:

We therefore, in consideration thereof, enjoin and command you, each and every of you, that from and immediately after the receipt and notice of this. our writ, by you, or any of you, you shall not sell, assign, transfer, or incumber, or otherwise intermeddle with the title to any of the business and property used therein, and patents and patent rights subject of the contract between you and the said Morley Finishing Machine Company of October 9, 1897, and particularly shall not withdraw any money from said business, nor sell, assign, transfer, incumber, or otherwise intermeddle with the title to any of the following described patents and inventions, or the rights therein: [Then followed a long list of patents and pending applications for patents.]

William Quinby, for appellant.

Frederick P. Fish and Robert F. Herrick, for appellee.

Before PUTNAM, Circuit Judge, and BROWN and LOWELL, District Judges.

PER CURIAM. With reference to the letter of Mr. Sinclair, which it is admitted must be read into the alleged agreement which the plaintiff seeks to enforce, it appears to the court that the expression "cash for his merchandise" is so indefinite as to leave the alleged agreement so vague that it is doubtful whether an equity court can compel its enforcement; and, moreover, it is doubtful whether the instrument of conveyance submitted to the defendant for execution by him contained a proper offer to carry out the draft contract as it was supplemented by that letter; and, further, it appears very doubtful whether the alleged agreement covers the patents relating to hinged lasts, in reference to which an apparently fair controversy has arisen between the parties. On the whole, the court is of the opinion that the case, as presented, is so doubtful on the merits that an injunction of the broad character granted below, involving the defendant in so much inconvenience and possible loss, ought not, in this case, to be affirmed. The order appealed from is reversed, and the costs of this court are awarded to the appellant.